FILED

2018 MAY -4 PM 4:40

CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE VASQUEZ,<br>MELQUIADES JACINTO LARA, and<br>RICARDO MENDOZA OSEGUERA,<br><br>Defendants. | CR No. CR 18 00244-JLS<br><br><u>I N D I C T M E N T</u><br><br>[18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1546(a): False Swearing in Immigration Matter; 18 U.S.C. § 1351(a): Fraud in Foreign Labor Contracting; 18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B): Operating an Unlicensed Money Transmitting Business; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), 982(a)(1) and 982(a)(6)(A)(ii) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

<u>The H-2A Visa Program</u>

1. The H-2A visa program allowed employers in the United States to hire foreign workers for temporary or seasonal agricultural work if the employer could not find domestic workers who were able, willing, qualified, and available. A prospective H-2A worker could

not apply for an H-2A visa until the prospective employer had received an approved visa petition from the United States Citizenship and Immigration Services ("USCIS").

2. An H-2A Labor Contractor ("Contractor") was an individual or business that engaged in the employment, recruitment, soliciting, hiring, furnishing, housing, or transportation of H-2A workers, generally on behalf of farms. A Contractor could petition for H-2A visas for workers who the Contractor would then provide to farms for agricultural work. Typically, a farm would pay the Contractor a lump sum for a specified amount of work, and the Contractor was then responsible for paying the H-2A workers.

3. In order to obtain an approved H-2A visa petition for its prospective workers, the H-2A employer, including a Contractor, was required first to file a Department of Labor ("DOL") Form 790 ("Job Order") with the State Workforce Agency ("SWA") in the geographic area of intended employment. In California, the SWA was the Employment Development Department ("EDD").

4. The Job Order included information relating to the job offer such as wages, hours, the anticipated duration of employment, the geographic area of employment, the type of work, and guarantees regarding free housing and transportation to be provided by the employer to the H-2A workers.

5. Once the SWA approved the Job Order, the employer could obtain a Labor Certification from the DOL by filing a DOL Form 9142A, Application for Temporary Employment Certification ("Employment Certification Application"). Prior to granting the Labor Certification, DOL was required to determine that there were not sufficient able, willing, and qualified United States workers

available to perform the temporary or seasonal agricultural employment, and that the employment of H-2A workers would not adversely affect the wages and working conditions of similarly employed United States workers.

6. After receiving the Labor Certification, the employer was required to file a Petition for Nonimmigrant Worker Form I-129 ("Petition") with USCIS. Once the petition was approved, a prospective H-2A worker could file his or her visa application with the Department of State.

7. To apply for an H-2A visa, a Nonimmigrant Visa Application ("Form DS-160") was submitted electronically through the United States Department of State's website. Consular officers used the information entered on the Form DS-160 to process the visa application and, following a personal interview, determine an applicant's eligibility for a nonimmigrant visa. If the Department of State approved the visa application, a temporary H-2A employment visa was issued to the alien for a period of up to three years.

8. The H-2A program included various protections intended to protect domestic workers from negative effects on wages or working conditions and to protect the foreign workers from exploitation, specifically:

a. H-2A employers were prohibited from seeking or receiving payments from workers for any activity related to obtaining a labor certification.

b. H-2A employers were prohibited from charging workers for any tools, supplies, and other equipment required for the job, for any transportation to and from fields, and for any employer-

provided housing. Indeed, H-2A employers were required to provide housing at no cost to the workers.

c. In addition to the fees employers were prohibited from charging H-2A workers, employers were also prohibited from making misrepresentations to H-2A workers regarding the terms, working conditions, benefits, and wages related to their employment in the United States. As a result, the employer and its agents were prohibited from failing to disclose deductions that they intended to impose once work had commenced.

d. The employer was required to comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws and payroll deductions.

9. H-2A status only allowed an H-2A visa holder to enter the United States and work for the specific employer who filed the visa Petition. Therefore, if the H-2A worker left the employer, the worker's immigration status was no longer valid and she or he was required to depart the United States.

## THE DEFENDANTS AND THEIR ROLES

10. Defendant JORGE VASQUEZ ("VASQUEZ") was the owner of H-2A Placement Services, a visa processing facilitator and farm labor recruiting company based out of Rancho Cucamonga, California. H-2A Placement Services assisted farm labor contractors in recruiting foreign workers and navigating the H-2A visa application process.

11. Defendant MELQUIADES JACINTO LARA ("JACINTO") owned and operated an H-2A Contracting Business, J&D Harvesting. Defendant JACINTO contracted farmworkers to farms in and around Ventura County. The workers engaged in agricultural work, including the harvesting of

produce, such as strawberries, citrus fruits, and avocados. The farms paid defendant JACINTO a lump sum, and defendant JACINTO paid the workers directly.

12. Defendant RICARDO MENDOZA OSEGUERA ("OSEGUERA") owned and operated a music and convenience store in Santa Paula, California, called Discoteca Mi Pueblito. Defendant JACINTO paid his workers for their work on the farms with vouchers redeemable at Discoteca Mi Pueblito, which defendant OSEGUERA exchanged for cash, after deducting fees from the workers' pay.

COUNT ONE

[18 U.S.C. § 371]

13. Paragraphs 1-12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A. THE OBJECTS OF THE CONSPIRACY

14. Beginning on a date unknown, and continuing to on or about May 4, 2018, in Ventura County, within the Central District of California, and elsewhere, defendants VASQUEZ and JACINTO knowingly conspired and agreed with each other to commit the following offenses against the United States:

a. Mail Fraud, in violation of Title 18, United States Code, Section 1341;

b. False Swearing in Immigration Matter, in violation of Title 18, United States Code, Section 1546(a);

c. Fraud in Foreign Labor Contracting, in violation of Title 18, United States Code, Section 1351.

B. THE MANNER AND MEANS OF THE CONSPIRACY

15. The objects of the conspiracy were carried out, and were to be carried out, in substance, as follows:

a. Defendant JACINTO would file a Form 9142A, Application for Temporary Employment Certification ("Employment Certification Application") with the Department of Labor ("DOL"). As part of the application, defendant JACINTO would agree to provide H-2A workers with transportation and housing at no cost to the workers.

b. Defendant VASQUEZ would help defendant JACINTO file a Form I-129 Petition for Nonimmigrant Worker ("Petition") for H-2A visas with the United States Citizenship and Immigration Services ("USCIS"). As part of the application, defendant JACINTO would make

misrepresentations regarding the pay that the workers would receive and the fees that the workers would have to pay.

c. Defendant VASQUEZ would travel to Mexico to recruit farmworkers for the H-2A visas. Defendant VASQUEZ would charge the potential visa recipients approximately $1,500 to $3,000. Defendant VASQUEZ would tell the potential visa recipients that they would be provided with agricultural work and that their visas would be valid for three years; he did not inform the workers that they would be charged fees for housing, food, and transportation and that the visas would expire in December 2013.

d. Defendant VASQUEZ would meet the workers in Tijuana and prepare them for their interviews with the Department of State. Following the workers' receipt of the H-2A visas, defendant VASQUEZ would facilitate travel from Tijuana, Mexico to in or around Ventura County, California.

e. Defendant VASQUEZ would agree with defendant JACINTO to provide the H-2A beneficiaries of defendant JACINTO's visa application with food, housing, and transportation.

f. Defendant VASQUEZ would charge H-2A workers for transportation and housing.

g. In the course of conducting their fraudulent scheme, defendant JACINTO and defendant VASQUEZ knowingly caused to be delivered by a private and commercial interstate carrier various Forms I-129 and Applications for Temporary Employment Certification containing false statements.

C. <u>OVERT ACTS</u>

16. On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants VASQUEZ and

JACINTO, together with others unknown to the Grand Jury, committed, and caused others to commit, the following overt acts, among others, within the Central District of California and elsewhere:

Overt Act No. 1: On or about January 9, 2013, defendant VASQUEZ charged L.A.M.R. $1,000 in exchange for an H-2A visa.

Overt Act No. 2: On or about January 9, 2013, defendant VASQUEZ charged R.A.A. $466 in exchange for an H-2A visa.

Overt Act No. 3: On or about January 14, 2013, defendant VASQUEZ charged R.M.M. $956 in exchange for an H-2A visa.

Overt Act No. 4: On or about January 14, 2013, defendant VASQUEZ charged R.A.A. an additional $544 in exchange for an H-2A visa.

Overt Act No. 5: On or about January 16, 2013, defendant VASQUEZ charged R.C.M. $1,000 in exchange for an H-2A visa.

Overt Act No. 6: On or about March 2, 2013, defendant VASQUEZ charged J.G.R. $1,000 in exchange for an H-2A visa.

Overt Act No. 7: On or about March 4, 2013, defendant VASQUEZ charged R.M.M. an additional $940.65 in exchange for an H-2A visa.

Overt Act No. 8: On or about March 22, 2013, defendant JACINTO signed an Agricultural and Food Processing Clearance Order, DOL Employment and Training Administration ("ETA") Form 790. On the Order, defendant JACINTO represented that J&D Harvesting, Inc., in partnership with H2A Placement Services, Inc., would ensure that housing would be provided at no cost to H-2A workers, and that questions regarding housing should be directed to defendant VASQUEZ.

Overt Act No. 9: On or about May 9, 2013, defendant JACINTO, through counsel, transmitted the Agricultural and Food Processing Clearance Order, DOL ETA Form 790, with the DOL via FedEx, a private

and commercial interstate carrier, from Orange, California, to Chicago, Illinois.

Overt Act No. 10: On or about May 14, 2013, defendant VASQUEZ charged R.C.M. an additional $500 for an H-2A visa.

Overt Act No. 11: On or about May 14, 2013, defendant VASQUEZ charged R.A.A. an additional $500 in exchange for an H-2A visa.

Overt Act No. 12: On or about May 14, 2013, defendant VASQUEZ charged R.M.M. an additional $469.64 in exchange for an H-2A visa.

Overt Act No. 13: On or about June 21, 2013, defendant VASQUEZ charged M.H.G. and M.G.V. $2,500 each in exchange for H-2A visas.

Overt Act No. 14: On or about July 11, 2013, defendant JACINTO signed an Application for Temporary Employment Certification, DOL ETA Form 9142A, with the DOL. On the Application, defendant JACINTO made the following misrepresentations:

a. That defendant JACINTO would provide for or secure housing for workers without charge to the worker.

b. That defendant JACINTO would provide transportation between the workers' living quarters and the employer's worksite without cost to the worker.

c. That defendant JACINTO and his agents had not sought or received payment of any kind from the H-2A workers for any activity related to obtaining labor certification.

d. That defendant JACINTO had and would contractually forbid any foreign labor contractor or recruiter whom defendant JACINTO engaged in international recruitment of H-2A workers to seek or receive payments from prospective employees.

Overt Act No. 15: On or about July 12, 2013, defendant JACINTO signed a Petition for Nonimmigrant Worker, USCIS Form I-129,

requesting H-2A visas for 75 unnamed workers from Guatemala, El Salvador, and Mexico to harvest lemons, avocados, and oranges. On the Petition, defendant JACINTO made the following misrepresentations:

a. That the workers would be paid $10.74 per hour and would work 40 hours per week.

b. That defendant JACINTO did not use and did not plan to use a staffing, recruiting, or similar placement service or agent to locate the H-2A workers that he intended to hire by filing the Petition.

c. That J&D Harvesting, Inc., in partnership with H2A Placement Services, Inc., would provide housing and transportation to each temporary agricultural field worker at no additional cost to the worker.

d. That none of the H-2A workers who defendant JACINTO had located or planned to hire had paid defendant JACINTO, J&D Harvesting, or any service or agent any form of compensation as a condition of employment.

<u>Overt Act No. 16:</u> On or about July 16, 2013, defendant JACINTO, through counsel, transmitted the Petition for Nonimmigrant Worker, USCIS Form I-129, with USCIS via FedEx, a private and commercial interstate carrier, from Orange, California, to the USCIS California Service Center in Laguna Niguel, California.

<u>Overt Act No. 17:</u> On or about December 11, 2013, defendant JACINTO signed a Petition for Nonimmigrant Worker, USCIS Form I-129, to extend the visas for 25 of the workers who received visas following the July 16, 2013 Petition, and requested an additional 50

H-2A visas to compensate for workers who had absconded. On the Petition, defendant JACINTO made the following misrepresentations:

a. That the workers would be paid $10.74 per hour and would work 40 hours per week.

b. That defendant JACINTO did not use and did not plan to use a staffing, recruiting, or similar placement service or agent to locate the H-2A workers that he intended to hire by filing the Petition.

c. That J&D Harvesting, Inc., in partnership with H2A Placement Services, Inc., would provide housing and transportation to each temporary agricultural field worker at no additional cost to the worker.

d. That none of the H-2A workers who defendant JACINTO had located or planned to hire had paid defendant JACINTO, J&D Harvesting, or any service or agent any form of compensation as a condition of employment.

Overt Act No. 18: On or about December 11, 2013, defendant JACINTO transmitted the Petition for Nonimmigrant Worker Form I-129 with USCIS via FedEx, a private and commercial interstate carrier, from Orange, California, to the USCIS California Service Center in Laguna Niguel, California.

Overt Act No. 19: On or about March 18, 2014, defendant VASQUEZ told an individual who defendant VASQUEZ believed was an H-2A worker, but who was actually a cooperating source working with law enforcement ("the CS"), and approximately 14 other H-2A workers that the workers would have to pay housing and transportation costs because defendant JACINTO would not incur the cost.

Overt Act No. 20: On or about March 18, 2014, defendant VASQUEZ told the CS that defendant VASQUEZ could get the CS's friend an H-2A visa and that the friend would have to pay $1,500 to begin the process and $1,500 once he arrived in the United States.

Overt Act No. 21: On or about April 15, 2014, defendant VASQUEZ spoke to the CS by telephone and told the CS that if the CS paid the $1,500 that remained of his debt for the H-2A visa, then defendant VASQUEZ would file an application to extend the visa so that the CS could go to Las Vegas and work in the construction industry.

Overt Act No. 22: In or about April 2014, defendant VASQUEZ charged J&D Harvesting visa recipients A.L.V., A.M., A.M.M., B.M.M., E.L.R., E.H.H., F.D.J.L.F., F.M.I., G.A.F., J.E.A.R., J.G.L.F., J.G.A.M., J.M.L.F., J.N.M.E., J.S.E., L.E.R.P., M.C.M., M.A.F.M., O.M.T., R.M.R., E.M.M., F.P., G.A.O., and I.D. approximately $35 per week for housing and $7 per week for transportation. Defendant VASQUEZ charged each of these individuals an additional $80 per week for food.

Overt Act No. 23: On or about April 22, 2014, the CS's "friend," who, unbeknownst to defendant VASQUEZ, was an undercover agent working with the Department of Labor ("the UC"), spoke with defendant VASQUEZ by telephone, told defendant VASQUEZ that s/he worked in the construction industry in Las Vegas, and asked whether defendant VASQUEZ could obtain an H-2A visa for her/him even though s/he had no intention of working in the agricultural industry. Defendant VASQUEZ said that it was not a problem and that defendant VASQUEZ could obtain an H-2A visa for the UC for $3,500 to $4,000.

<u>Overt Act No. 24:</u> On or about April 28, 2014, defendant VASQUEZ spoke to the UC by telephone and told the UC that s/he should not apply for a Mexican passport in Las Vegas because it was important that there be no record of the UC having been in the United States prior to the H-2A visa application.

<u>Overt Act No. 25:</u> On or about May 2, 2014, defendant VASQUEZ charged the UC $1,750 as an installment for an H-2A visa.

<u>Overt Act No. 26:</u> On or about May 20, 2014, defendant VASQUEZ explained to a group of H-2A workers that the H-2A regulations required the workers to be outside the United States for a period of three months prior to reapplying for a new H-2A visa. Defendant VASQUEZ told the workers that he and defendant JACINTO would permit them to remain in the United States and work with J&D Harvesting until the visas could be renewed.

<u>Overt Act No. 27:</u> On or about May 29, 2014, defendant VASQUEZ charged the CS an additional $500 in exchange for an extension of the CS's H-2A visa.

<u>Overt Act No. 28:</u> On or about February 20, 2015, defendant VASQUEZ possessed passports and Social Security cards belonging to H-2A workers, receipts documenting payment by H-2A workers for H-2A visas, and records relating to H-2A workers' payment of fees for food, transportation, and housing.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 1341, 2(a)]

17. Paragraphs 1-12 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

A. <u>SCHEME TO DEFRAUD</u>

18. Beginning on a date unknown to the Grand Jury, and continuing through at least in or around December 2013, in Ventura, San Bernardino, and Orange Counties, within the Central District of California, and elsewhere, defendants JORGE VASQUEZ ("VASQUEZ") and MELQUIADES JACINTO LARA ("JACINTO"), each aiding and abetting the other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud potential H-2A workers, the Department of Labor, the United States Citizenship and Immigration Services, and the Department of State, by means of material false and fraudulent pretenses, misrepresentations, and promises, and the concealment of material facts.

19. The scheme to defraud was carried out by defendants JACINTO and VASQUEZ, in substance, as set forth in Paragraph 15 of this Indictment.

B. <u>USE OF THE MAIL</u>

20. On or about the dates set forth below, within the Central District of California and elsewhere, defendants VASQUEZ and JACINTO, each aiding and abetting the other, for the purpose of executing and attempting to execute the above-described scheme to defraud, caused the following items to be deposited with and delivered by a private and commercial interstate carrier:

| Count | Date | Item Mailed |
|---|---|---|
| TWO | May 9, 2013 | An envelope containing DOL ETA Form 790, sent from Orange, California, via FedEx, to the DOL in Chicago, Illinois. |
| THREE | July 16, 2013 | An envelope containing USCIS Form I-129, sent from Orange, California, via FedEx, to USCIS in Laguna Niguel, California. |
| FOUR | December 11, 2013 | An envelope containing USCIS Form I-129, sent from Orange, California, via FedEx, to USCIS in Laguna Niguel, California. |

COUNT FIVE

[18 U.S.C. §§ 1546(a), 2(a)]

21. On or about July 11, 2013, in Ventura County, within the Central District of California, defendants JORGE VASQUEZ ("VASQUEZ") and MELQUIADES JACINTO LARA ("JACINTO"), each aiding and abetting the other, knowingly subscribed as true under penalty of perjury, a false statement with respect to a material fact in an application required by the immigration laws and regulations prescribed thereunder, to wit, Department of Labor Form 9142A, and knowingly presented such application that contained such false statement, in that, in such application, filed with the Department of Labor, defendant JACINTO, aided and abetted by defendant VASQUEZ, falsely stated the following:

a. That defendant JACINTO would provide transportation between the workers' living quarters and the employer's worksite and secure housing without cost to the workers, when, in truth and in fact, as defendants VASQUEZ and JACINTO knew, defendant VASQUEZ would charge the workers for housing and transportation; and

b. That defendant JACINTO and his agents had not sought or received payment of any kind from the H-2A workers for any activity related to obtaining labor certification and that defendant JACINTO had and would contractually forbid any foreign labor contractor or recruiter whom defendant JACINTO engaged in international recruitment of H-2A workers to seek or receive payments from prospective employees when, in truth and in fact, as defendants VASQUEZ and JACINTO knew, defendant VASQUEZ would charge the workers for their H-2A visas.

COUNT SIX

[18 U.S.C. §§ 1351(a), 2(a)]

22. In or around July 2013, in Ventura and San Bernardino Counties, within the Central District of California and elsewhere, defendants JORGE VASQUEZ ("VASQUEZ") and MELQUIADES JACINTO LARA ("JACINTO"), each aiding and abetting the other, knowingly and with intent to defraud recruited, solicited, and hired one or more persons outside the United States for purposes of employment in the United States by means of materially false and fraudulent pretenses, representations, and promises regarding that employment, in that defendants VASQUEZ and JACINTO would represent to potential H-2A workers that the workers' H-2A visas would be valid for three years when, in truth and in fact, as defendants VASQUEZ and JACINTO well knew, the H-2A visas would be valid through December 15, 2013.

COUNT SEVEN

[18 U.S.C. §§ 1960(a), (b)(1)(A), (b)(1)(B), 2(a)]

23. Beginning in or around June 2009 and continuing until in or around March 2015, in Ventura County, within the Central District of California, and elsewhere, defendants MELQUIADES JACINTO LARA and RICARDO MENDOZA OSEGUERA, each aiding and abetting the other, knowingly conducted, controlled, managed, supervised, directed, and owned an unlicensed money transmitting business affecting interstate and foreign commerce that: (1) operated without an appropriate money transmitting license in a State, namely, California, where such operation is punishable as a felony under state law; and (2) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations thereunder.

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 982(a)(6)(A)(ii), 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants MELQUIADES JACINTO LARA ("JACINTO") and JORGE VASQUEZ ("VASQUEZ") that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(6)(A)(ii) and 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) in the event of either defendant's conviction under any of Counts One through Six of this Indictment.

1. Defendants JACINTO and VASQUEZ (collectively, the "defendants") shall forfeit to the United States of America the following property:

a. all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts One through Six of this Indictment including, without limitation, the following property (collectively, the "Forfeitable Property"):

i. the real property located at 360 3rd Street in Fillmore, California; and

ii. approximately $1,404,187 in U.S. Currency seized by law enforcement officers during the execution of a search warrant on June 9, 2017 at 146 South Ojai Street in Santa Paula, California; and

b. all right, title, and interest in any and all property used to facilitate, or intended to be used to facilitate the commission of any offense set forth in any of Counts One through Six

of this Indictment including, without limitation, the Forfeitable Property.

c. a sum of money equal to the total value of the property described in subparagraphs a. and b. above.

2. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendants shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982(a)(1), 981(a)(1)(A) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants MELQUIADES JACINTO LARA ("JACINTO") and RICARDO MENDOZA OSEGUERA ("OSEGURA") that the United States of America will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 982(a)(1) and 981(a)(1)(A) and Title 28, United States Code, Section 2461(c) in the event of either defendant's conviction under Count Seven of this Indictment.

2. Defendants JACINTO and OSEGUERA (collectively, the "defendants") shall forfeit to the United States of America the following property:

a. all right, title, and interest in any and all property, real or personal, involved in a violation of any offense set forth in Count Seven of this Indictment including, without limitation approximately $1,404,187 in U.S. Currency seized by law enforcement officers during the execution of a search warrant on June 9, 2017 at 146 South Ojai Street in Santa Paula, California; and

b. a sum of money equal to the total value of the property described in subparagraph a.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendants shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of any defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or

deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JUSTIN R. RHOADES
Assistant United States Attorney
Chief, Violent & Organized Crime Section

STACEY R. FERNANDEZ
Special Assistant United States Attorney
Violent & Organized Crime Section